**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ILLINOIS**

KEON CORLEY,                     )
#R-68544,                        )
                                 )
            Plaintiff,           )
                                 )
        vs.                      )          Case No. 16-cv-850-NJR
                                 )
WEXFORD HEALTH SOURCES, INC.,    )
KIMBERLY BUTLER,                 )
TROST, GAIL WALLS, DR. FUENTES,  )
MARTHA OAKLEY, DR. RITZ,         )
C/O JOHNSON, DILDAY,             )
REDNOUR, and SPILLER,            )
                                 )
            Defendants.          )

## MEMORANDUM AND ORDER

**ROSENSTENGEL, District Judge:**

Plaintiff Keon Corley, an inmate who is currently incarcerated at Menard Correctional Center ("Menard"), brings this *pro se* action for alleged violations of his constitutional rights under 42 U.S.C. § 1983 (Doc. 1). All of Corley's claims stem from an incident of alleged excessive force that caused injury to his hand, as well as subsequent medical care provided for that injury. Corley claims that his Eighth Amendment rights have been violated by Defendants' deliberate indifference to his serious medical needs. He also claims that his Fourteenth Amendment rights have been violated by Defendants' failure to adequately address his grievances. Finally, he alleges that Defendants' offensive actions were part of a policy or scheme to save money on health care. In connection with these claims, Corley sues Wexford Health Care Services, Kimberly Butler (warden), Trost (medical director/doctor), Gail Walls (nurse, health care unit administrator), Fuentes (doctor), Martha Oakley (nurse/medical technician), Ritz (doctor), Johnson (correctional officer), Dilday (officer), Rednour (officer), and Spiller (officer/internal affairs). Corley seeks monetary compensation, as well as

corrective surgery for his hand and a transfer to another facility in the Illinois Department of Corrections.

This case is now before the Court for a preliminary review of the Complaint pursuant to 28 U.S.C. § 1915A. Under Section 1915A, the Court is required to promptly screen prisoner Complaints to filter out nonmeritorious claims. 28 U.S.C. § 1915A(a). The Court is required to dismiss any portion of the Complaint that is legally frivolous, malicious, fails to state a claim upon which relief may be granted, or asks for money damages from a defendant who by law is immune from such relief. 28 U.S.C. § 1915A(b).

An action or claim is frivolous if "it lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). Frivolousness is an objective standard that refers to a claim that "no reasonable person could suppose to have any merit." *Lee v. Clinton*, 209 F.3d 1025, 1026-27 (7th Cir. 2000). An action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The claim of entitlement to relief must cross "the line between possibility and plausibility." *Id*. at 557. Conversely, a complaint is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Although the Court is obligated to accept factual allegations as true, *see Smith v. Peters*, 631 F.3d 418, 419 (7th Cir. 2011), some factual allegations may be so sketchy or implausible that they fail to provide sufficient notice of a plaintiff's claim. *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009). Additionally, courts "should not accept as adequate abstract recitations of the elements of a cause of action or conclusory legal statements." *Id*. At the same time, however, the factual allegations of a *pro se* complaint are to be liberally construed. *See Arnett v. Webster*, 658 F.3d 742, 751 (7th Cir. 2011); *Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir. 2009).

**The Complaint**

On March 2, 2015, Corley was on the outdoor yard at Menard when a fight broke out involving twenty or more inmates (Doc. 1 at 5). Presiding officers fired a warning shot into the air from the guard tower, which had the effect of stopping the fight (*Id.*). By the time officers arrived on the yard, Corley was lying on the ground in compliance with prison rules governing this type of situation (*Id.* at 5-6). Rather than cuffing Corley on the ground, Officer Rednour and John Doe 1 demanded that Corley get up (*Id.*). The officers then slammed him back into the ground with great force which caused him to put out his hands to break his fall and to hit his head on the pavement (*Id.*). The officers indicated that the force showed that inmates did not run the institution (*Id.*). Officer Rednour then cuffed Corley tightly despite his pleas about his hand and aggressively escorted him to the medical unit (*Id.* at 6-7).

Corley alleges that excessive force was used against him because there was an environment or pattern of staff on inmate violence at Menard (*Id.* at 8-11). He claims that Defendants Butler and Spiller contributed to the existence of this environment, along with the entire internal affairs department, because they failed to address inmate grievances about the existence of such an environment (*Id.*). Further, Corley alleges that their non-response to the hostile environment constituted a failure to intervene or to protect him from the harm that he sustained at the hands of Rednour and John Doe 1 (*Id.*). According to Corley, Butler and Spiller had received notice on multiple occasions that there was a pattern of excessive force by guards against inmates (*Id.*). Specifically, Corley also alleges that Butler and Spiller were notified of his beating via multiple grievances that he filed about the use of excessive force, to which he received no responses (*Id.* at 33).

At the medical unit, Nurse Oakley declined care for Corley's injuries after he told her he sustained injuries as a result of Rednour's abuse (*Id.* at 11-12). Instead, she falsely noted in his chart that he was not injured and sent him back to his cell without medication or treatment (*Id.*). During

Corley's consultation with Oakley, Rednour indicated that it was time to go and took Corley to segregation before any treatment was rendered (*Id.* at 12-14).

The next day, Corley saw a doctor, an x-ray was ordered, and the results showed a fracture to his fourth finger (*Id.* at 15). Corley alleges that Oakley's initial refusal to treat, and subsequent delays by medical personnel, were caused by Defendant Wexford's policy. He claims that the policy was designed to save money by:  understaffing the medical unit; failing to provide training to employees; refusing to follow recommendations of outside care providers; delaying treatment by requiring an approval process; and prescribing minimal pain medications (*Id.* at 14-30). Specifically as to the understaffing, Corley claims that Defendant Trost also was liable because he had personal responsibility for hiring and training medical personnel (*Id.* at 17). Corley also baldly alleges that Defendant Ritz was responsible for allowing the medical environment to be perpetually inadequate (*Id.* at 23-24).

Corley was prescribed Motrin for his pain (*Id.* at 19). He informed nurses and Defendants Trost and Fuentes that the Motrin was not helping with the pain, but he was told that they could not issue a stronger medication per Wexford's policy. (*Id.*).

Ultimately, four days later, on March 6, 2015, Corley was sent to an outside orthopedist for treatment (*Id.* at 20). The orthopedist recommended surgery, and surgery took place on March 9, 2015 (*Id.*). Corley attended a single follow-up appointment on March 19, 2015, and was directed to return in about two weeks (*Id.* at 22). Subsequently, Defendants failed to transport Corley to follow-up appointments and physical therapy sessions (*Id.* at 22-23). Corley saw the outside doctor and therapist sporadically on April 22, 2015 (doctor), May 5, 2015 (therapist), and May 7, 2015 (doctor) (*Id.* at 25-28). Follow-up care and therapy was recommended at these appointments, but Corley alleges that he did not get the care and that Wexford's policy of saving money directly interfered with his access to appropriate care (*Id.*).

The lack of follow-up care caused disfiguration of Corley's hand and a loss of mobility,

which may be permanent (*Id.* at 24). On the single occasion that he was taken to physical therapy, the transport officers (Defendants Johnson and Dilday) refused to remove the handcuffs keeping his hands behind his back (*Id.* at 26-27). This prevented the physical therapist from appropriate access to his hand (*Id.*). Corley alleges that Defendants Trost, Butler, and Ritz all played a role in the denial of physical therapy because they knew of his appointment and did not preemptively address the issue of his handcuffs (*Id.*).

Corley also alleges that Dr. Ritz denied a recommendation for ongoing care made by an external care provider (*Id.* at 29). Corley alleges that the denial was made in accord with Wexford's money saving policy (*Id.*).

Corley further alleges that he informed Defendant Walls of the inadequacy of medical care, but that she did not help him to address the situation (*Id.* at 25). Instead, Walls minimized the problems, placing blame for scheduling issues on the external providers (*Id.*).

Corley also alleges that his due process rights were violated in connection with the excessive force incident because he was sent to segregation for a year as a result of the incident (*Id.* at 30-33). Although Corley does not contest the punishment of segregation itself, he contends that he was made to stay in segregation for twenty-eight days beyond a year because Defendant Spiller refused to correct the records to reflect a start date of segregation of May 2, 2015 (*Id.*). As a result of Spiller's and Butler's knowing refusal to clarify his start date in segregation, he was kept in segregation until May 30, 2016 (*Id.*). Corley alleges that the twenty-eight day extension of his term in segregation constituted retaliation and cruel and unusual punishment (*Id.*).

## Merits Review Pursuant to 28 U.S.C. § 1915A

Based on the allegations of the complaint, the Court finds it convenient to divide the *pro se* action into the following counts. The Court notes that Corley broke his original complaint down into three general categories, and the Court will continue to use that same essential structure, but the Court also finds it helpful to assign a further delineation of the counts for clarity. The parties and the

Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court. The designation of these counts does not constitute an opinion as to their merit. Any other claim that is mentioned in the complaint but not addressed in this Order should be considered dismissed without prejudice.

### *Excessive force claims*

**Count 1:**   Eighth Amendment excessive force claim for Defendant Rednour and John Doe 1's conduct when they slammed Corley into the ground on March 2, 2015, to make an example out of him during an inmate fight on the yard at Menard;

**Count 2:**   Eighth Amendment failure to protect or failure to intervene claim against Defendants Butler and Spiller for failing to put an end to the guard-on-inmate violence at Menard;

**Count 3:**   Eighth Amendment pattern of violence or harmful environment claim against Defendants Butler and Spiller for condoning and maintaining a dangerous environment despite being on notice of multiple incidents of improper guard-on-inmate violence;

**Count 4:**   Fourteenth Amendment due process claim against Defendants Butler and Spiller for failing to respond to Corley's grievances about the use of excessive force during the March 2, 2015 incident;

### *Deliberate indifference claims*

**Count 5:**   Eighth Amendment deliberate indifference to serious medical need claim against Defendant Wexford for maintaining a policy that led to inadequate medical care, delayed medical care, improperly trained medical staff, lack of follow up care, and refusal of pain medication, with the objective of saving money;

**Count 6:**   Eighth Amendment deliberate indifference claim against Dr. Trost because he failed to train or hire adequate medical staff at Menard;

**Count 7:**   Eighth Amendment deliberate indifference claim against Dr. Ritz for allowing an environment of inadequate care to exist;

**Count 8:**   Eighth Amendment claim for deliberate indifference to a serious medical need when Defendant Oakley refused pain medication or other treatment for Corley's injured hand on March 2, 2015;

**Count 9:**   Eighth Amendment claim for deliberate indifference to a serious medical condition by delaying medical care for Corley's hand injury on March 2, 2015, by Defendant Rednour;

**Count 10**:    Eighth Amendment deliberate indifference claim against Drs. Trost and Fuentes for denying pain medication stronger than Motrin to treat Corley's injured hand;

**Count 11**:    Eighth Amendment claim for deliberate indifference against Defendants Johnson and Dilday for refusing to remove Corley's handcuffs and thus obstructing the provision of appropriate physical therapy;

**Count 12**:    Eighth Amendment deliberate indifference claim against Dr. Ritz for failing to allow adequate access to physical therapy via a cuff pass and for denying ongoing care recommended by an external provider;

**Count 13**:    Eighth Amendment deliberate indifference claim against Defendant Gail Walls for failing to adequately respond to Corley's grievances about a missed appointment, an inadequate physical therapy appointment, and the denial of an external provider's recommendation for follow-up care;

**Count 14**:    Eighth Amendment claim for deliberate indifference against Defendant Butler for failing to address the provision of medical care for Corley's hand; and

### *First Amendment claim*

**Count 15**:    First Amendment retaliation claim against Defendants Butler and Spiller for failing to correct the record as to the one year term of segregation Corley was to serve, thus causing him to spend an extra twenty-eight days in segregation.

### *Excessive force claims*

### Count 1

The intentional use of excessive force by prison guards against an inmate without penological justification constitutes cruel and unusual punishment in violation of the Eighth Amendment and is actionable under Section 1983. *See Wilkins v. Gaddy*, 559 U.S. 34, 38-40 (2010); *DeWalt v. Carter*, 224 F.3d 607, 619 (7th Cir. 2000). An inmate must show that an assault occurred, and that "it was carried out 'maliciously and sadistically' rather than as part of 'a good-faith effort to maintain or restore discipline.'" *Wilkins*, 559 U.S. at 40 (citing *Hudson v. McMillian*, 503 U.S. 1, 6 (1992)). An inmate seeking damages for the use of excessive force need not establish serious bodily injury to make a claim, but not "every malevolent touch by a prison guard gives rise to a federal cause of

action." *Id.* at 37-38 (the question is whether force was *de minimis*, not whether the injury suffered was *de minimis*); *see also Outlaw v. Newkirk*, 259 F.3d 833, 837-38 (7th Cir. 2001).

"Several factors are relevant in determining whether a defendant applied force in good faith or for purposes of causing harm, including the need for force, the amount of force used, the threat reasonably perceived by the officer, efforts made to temper the severity of the force, and the extent of the injury caused by the force." *Lewis v. Downey*, 581 F.3d 467, 477 (7th Cir. 2009). For example, force may be excessive if a guard issues a directive and applies force without giving the inmate any time to comply with the directive. *Id.* at 478. However, force is not inherently severe or excessive simply because officers choose to use handcuffs or use some degree of force to move a disobedient inmate from one location to another. *See Fillmore v. Page*, 358 F.3d 496, 504-05 (7th Cir. 2004) (noting that incidental bumping and roughness that occurred when guards encountered and moved an inmate from his cell after he had thrown hot oil at other guards was not excessive force).

Here, Corley has presented sufficient facts to state a potential claim of excessive force. Although the prison guards who aggressively cuffed Corley and slammed him to the ground were apparently reporting to disobedience, it cannot be determined from the record if their use of force was appropriate or excessive. *See Wilkins,* 559 U.S. at 40. Count 1 will be allowed to proceed against Defendants Rednour and John Doe 1 so that the parties may gather sufficient factual information to assess the merits of this claim.

**Count 2**

In *Farmer v. Brennan*, 511 U.S. 825, 833 (1994), the United States Supreme Court held that "prison officials have a duty…to protect prisoners from violence at the hands of other prisoners." Not every risk of harm gives rise to a constitutional liability to protect. *Pinkston v. Madry*, 440 F.3d 879, 889 (7th Cir. 2011). Plaintiff must make a two-part showing: (1) that there was a serious risk of peril; and (2) that the liable individual easily could have done something to avert the risk, but did not do so. *Id.*

A threat to an inmate's physical safety may constitute a serious risk. *James v. Milwaukee Cnty.*, 956 F.2d 696, 699 (7th Cir. 1992). "A condition is objectively serious if failure to treat it could result in further significant injury or unnecessary and wanton infliction of pain." *Reed v. McBride*, 178 F.3d 849, 852 (7th Cir. 1999) (citations omitted). Additionally, a risk of harm is only serious if there is a strong likelihood that, absent action, harm will occur. *Pinkston*, 440 F.3d at 889. Subjectively, a plaintiff must prove that prison officials were aware of a specific, impending, and substantial threat to his safety and choose to refrain from acting. *Pope v. Shafer*, 86 F.3d 90, 92 (7th Cir. 1996) (noting that a jury was entitled to rely on evidence that a captain knew of a risk to an inmate and a pending transfer request, but failed to act on the request in finding that the captain failed to protect the inmate).

Here, Corley has not stated a claim against Defendants Butler or Spiller for a failure to intervene or protect him from a serious risk of harm because he has not identified facts sufficient to make the two-part showing of a serious risk and a failure to act. He makes general allegations that the environment at Menard is unsafe, but he does not describe how the unsafe environment posed a particularized threat for him, nor has he claimed that Butler or Spiller were aware of a specific and impending threat against him. *See Pope*, 86 F.3d at 92. Thus, Count 2 will be dismissed without prejudice for failure to state a claim upon which relief may be granted.

## Count 3

Corley alleges that there was an overriding policy, custom, or pattern of guard-on-inmate violence at Menard. Unconstitutional policies or customs can take three forms:  (1) an express policy that, when enforced, causes a constitutional deprivation; (2) a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a "custom or usage" with the force of law; or (3) an allegation that the constitutional injury was caused by a person with final policy-making authority. *Palmer v. Marion Cnty.*, 327 F.3d 588, 594-95 (7th Cir. 2003). A plaintiff bears the burden of demonstrating the use of an unconstitutional

custom or policy and general allegations or proof of isolated incidents of misconduct will not suffice to meet that burden. *Id.* at 595-96. Thus Corley must allege a series of deliberate violations that lay the presence of deliberate indifference. *Id.* at 596. In *Palmer*, the Seventh Circuit found that a plaintiff failed to state sufficient facts to support a custom or policy of dangerous and discriminatory housing of inmates where the plaintiff's allegations were two discrete instances of inmate fights and personal allegations that he believed there to be such a policy, absent any hard data. *Id.* at 596-97. The *Palmer* Court noted that to overcome summary judgment the plaintiff could have gathered evidence on how the facility sorted and classified inmates for housing purposes or how many fights occurred during a given time period. *Id.*

Here, Corley's bare assertions that there was a custom or pattern of maintaining a dangerous environment and his assertion that he was assaulted during a single incident are sufficient to state a potential claim. Though those allegations alone may not be sufficient to withstand summary judgment under the *Palmer* case, the allegations are sufficient to put Defendants on notice of the basic facts Corley relies upon in making the claim. It is a close call whether or not these claims should proceed, but at the screening phase Corley has not yet had the opportunity to engage in discovery to gather the type of evidence that may affirm or deny the existence of a violative custom or policy. Accordingly, at this juncture Count 3 will be allowed to proceed against Defendants Butler and Spiller.

**Count 4**

Corley alleges a violation of his Fourteenth Amendment due process rights by Defendants Butler and Spiller for their failure to respond to his grievances about the excessive force incident. Prison grievance procedures are not constitutionally mandated and thus do not implicate the Due Process Clause *per se*. As such, the alleged mishandling of grievances "by persons who otherwise did not cause or participate in the underlying conduct states no claim." *Owens v. Hinsley*, 635 F.3d 950, 953 (7th Cir. 2011). Put differently, the fact that Defendants may have ignored Corley's grievances

does not give rise to a due process claim against them. Corley does not allege that either Butler or Spiller played a personal role in the underlying harm—the beating on the prison yard—so Corley has failed to state a valid due process claim against these Defendants. Therefore, Count 4 will be dismissed with prejudice as to Defendants Butler and Spiller, the only individuals named in connection with this particular violation.

### Deliberate indifference claims

Many of the deliberate indifference claims invoke the same legal principles, so this section of the memorandum will open with an overview of the applicable legal framework. The Eighth Amendment to the United States Constitution protects prisoners from cruel and unusual punishment. U.S. CONST., amend. VIII; *see also Berry v. Peterman*, 604 F.3d 435 (7th Cir. 2010). Prison conditions that deprive inmates of basic human needs, such as inadequate nutrition, health, or safety, may constitute cruel and unusual punishment. *Rhodes v. Chapman*, 452 U.S. 337, 346 (1981); s*ee also James*, 956 F.2d at 699. Prison officials violate the Eighth Amendment's proscription against cruel and unusual punishment when their conduct demonstrates deliberate indifference to the serious medical needs of an inmate. *See Estelle v. Gamble*, 429 U.S. 97, 104 (1976); *Gutierrez v. Peters*, 111 F.3d 1364, 1369 (7th Cir. 1997). To establish deliberate indifference to a medical condition, a prisoner must show a condition that is sufficiently serious (objective component) and that an official acted with a sufficiently culpable state of mind in failing to address the condition (subjective component). *Id.* Whether an injury is serious enough is a very fact specific inquiry—seriousness may be shown if an ordinary doctor opined an injury warranted treatment, if an injury significantly impacted an individual's daily activities, or if an injury caused chronic or substantial pain, among other things. *Id.*

As to the subjective component, an official "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Jackson v. Ill. Medi-Car, Inc.*, 300 F.3d 760, 765 (7th Cir. 2002). If an official reasonably

responds to a risk, even if harm was not averted, deliberate indifference does not exist. *Id.* A claim for medical negligence does not amount to deliberate indifference. *Gutierrez*, 111 F.3d at 1369. Additionally, a reasonable response differs depending on the capacity of the alleged wrongdoer. A non-medical prison employee—one who for example handles grievances, or supervises prison operations—will generally not be liable for deliberate indifference if he or she believes the prisoner is receiving adequate medical care, or takes steps to verify that the inmate is receiving care. *See Greeno v. Daley*, 414 F.3d 645, 655-57 (7th Cir. 2005). Individual liability may arise on behalf of a non-medical defendant, however, if the defendant is made aware of a specific constitutional violation via correspondence from the inmate and the individual declines to take any action to address the situation. *See Perez v. Fenoglio*, 792 F.3d 768, 781-82 (7th Cir. 2015). Simply put, a prison official may not escape liability by turning a blind eye to serious harms. *Id.* at 781 ("deliberate indifference may be found where an official knows about unconstitutional conduct and facilitates, approves, condones, or 'turns a blind eye' to it").

In a case where an inmate claims a delay in treatment as opposed to a total denial, the plaintiff must offer some evidence that the delay caused lasting harm. *See Conley v. Birch*, 796 F.3d 742, 749 (7th Cir. 2015) (finding that a plaintiff may be able to prove to a jury that delay constituted deliberate indifference where the treating doctor testified that the bones in the hand would begin fusing quickly after an injury, and thus permanent damage may occur quickly). There is no bright line standard for how much of a delay is too much. There is also no bright line standard for how much care must be provided to avoid liability for deliberate indifference. A doctor or prison official is not required to follow every recommended course of care with precision, but ignoring recommendations of an outside provider may constitute deliberate indifference if doing so would result in the provision of such inadequate care that no reasonable medical official would agree with the course of action taken. *See Perez*, 792 F.3d at 778-79 (collecting cases) ("allegations that a prison official refused to follow the advice of a medical specialist for a non-medical reason may at times

constitute deliberate indifference"); *Holloway v. Delaware Cnty. Sheriff*, 700 F.3d 1063, 1074 (7th Cir. 2012) (stating that a prison doctor "is free to make his own, independent medical determination as to the necessity of certain treatments or medications, so long as the determination is based on the physician's professional judgment and does not go against accepted professional standards"). Although a prison official may not continue a course of treatment he knows is blatantly ineffective, prisoners are not entitled to receive unqualified access to healthcare. *See id.* at 1073-74. A doctor may provide the care he feels is reasonable so long as it falls within a "range of acceptable courses based on prevailing standards in the field." *Id.* at 1073.

The viability of a section 1983 claim turns in part on the nature of the alleged harm, in part on the role of the alleged actor, and in part on the type of relief sought. Section 1983 liability is premised primarily on individual liability of actors for harmful actions they personally took. Thus, to be liable under section 1983 "an individual defendant must have caused or participated in a constitutional deprivation." *Pepper v. Village of Oak Park*, 430 F.3d 809, 810 (7th Cir. 2005) (citations omitted). Monetary damages may be awarded for individual capacity claims. *See id.*

The doctrine of *respondeat superior* does not apply to section 1983 claims; thus, a defendant must be personally liable for the deprivation of a constitutional right. A defendant will be deemed to have sufficient personal responsibility if "he directed the conduct causing the constitutional violation, or if it occurred with his knowledge or consent." *See Sanville v. McCaughtry*, 266 F.3d 724, 740 (7th Cir. 2001). Thus, a supervisor may be liable for deliberate, reckless indifference to the misconduct of subordinates if it can be shown that the supervisor knew about the conduct and facilitated it, approved it, condoned it, or turned a blind eye to it for fear of what they might see. *See id.* (quoting *Chavez v. Ill. State Police*, 251 F.3d 612, 651 (7th Cir. 2001)).

By contrast, official capacity claims against individual prison officials are really claims against the government entity of which the official is a part. *See Wolf-Lille v. Sonquist*, 699 F.2d 864, 870 (7th Cir. 1983). Among other things, municipal liability may be based upon a claim of an

unconstitutional policy, pattern, or custom. *See Palmer*, 327 F.3d at 594-95. A plaintiff bears the burden of demonstrating an unconstitutional policy or custom and general allegations or proof of isolated incidents of misconduct will not suffice to meet that burden. *Id.* at 595-96. A plaintiff must allege a series of specific and deliberate violations that lay the premise of deliberate indifference. *Id.* at 596.

Naked allegations about the existence of a harmful policy or custom are not sufficient to state a claim for deliberate indifference. *See Boyce v. Moore*, 314 F.3d 884, 891 (7th Cir. 2002). A plaintiff must introduce some evidence of a pattern of constitutional violations that would allow the inference of a causal connection between the pattern and a larger constitutional violation. *Id.* Additionally, a plaintiff must show that the official or entity allegedly perpetuating the policy or custom had actual knowledge of the risk created by the policy or custom, and chose to act indifferently to the situation. *Id.*

Due to the constraints on liability and personal responsibility under section 1983, plaintiffs typically attempt to state claims against individual care providers for their failure to treat, or against individual prison officials for their refusal to facilitate adequate care. *See Daniel v. Cook Cnty.*, No. 15-2832, 2016 WL 4254934 *1, *3-4 (7th Cir. Aug. 12, 2016). The Seventh Circuit recently recognized, however, that it can be difficult for an inmate to state claims against individual defendants where the inmate is provided care from many different providers. *Id.* The Seventh Circuit noted "a common scenario: [that] an institution structured its affairs so that no one person was responsible for the inmate's care." *Id.* at *4. In such a situation, a plaintiff may attempt to bring a claim to demonstrate a harmful policy or custom that led to a constitutional injury. *Id.*

"[A]n inmate can meet this burden by offering competent evidence tending to show a general pattern of repeated behavior (i.e., something greater than a mere isolated event)." *Id.* An inmate must show more than deficiencies specific to his own experience. *Id.* "When seeking to rely upon indirect proof, he must come forward with evidence that could allow a reasonable trier of fact to find, [. . . ],

systemic and gross deficiencies in staffing, facilities, equipment, or procedures in a detention center's medical care system." *Id.* (quotations omitted). The plaintiff must also show that an official knew about the deficiencies and failed to act. *Id.* In *Daniel*, the Seventh Circuit found that a plaintiff provided sufficient evidence of a violative custom or policy to survive summary judgment via evidence of his own experience, testimony of medical care providers, and a Department of Justice report on health care in the institution. *Id.* at *5.

Objectively, Corley has identified an injury serious enough to pass threshold review. A fractured or broken hand is a condition that would typically be associated with extreme and persistent pain. *See Gutierrez*, 111 F.3d at 1369 (noting that a common cold or minor asthma attack may not be serious, but that a topical skin cyst could be serious). The subjective component of the deliberate indifference analysis will be conducted in turn with respect to each individual defendant and their role in the institution. *See Greeno*, 414 F.3d at 655-57.

**Count 5**

Corley alleges at numerous points throughout his complaint that Defendant Wexford maintained a policy designed to save money by providing minimally appropriate care. Corley alleges that this policy manifests in numerous ways including:  improperly trained medical staff; an understaffed medical unit; delayed medical care; refusal to prescribe pain medication; refusal to make referrals to specialists; refusal to follow specialists recommendations; avoidance of proper record keeping; and failure to provide follow up care. Corley's claims in this vein are not artfully pled and are presented at random throughout his complaint, making it difficult to discern the precise nature of his claim. In light of recent precedential decisions exploring the potential existence of a harmful policy by Wexford, however, the Court finds it appropriate for this claim to proceed for development of a more comprehensive factual record. *See e.g. Daniel,* No. 15-2832, 2016 WL 4254934 at *4-5 (noting the difficulty of proving a policy or custom of providing inadequate medical care and finding that the defendant had proffered sufficient evidence to survive summary judgment);

*Perez*, 792 F.3d at 780 (allowing a harmful policy claim to proceed against Wexford for nurse's alleged refusal to perform sutures, and for allegation that Wexford refused to maintain a staff doctor at a prison facility).

The Seventh Circuit recently commented upon the difficulty of proving an official policy or custom of providing inadequate medical care in its *Daniel* decision. *Daniel*, No. 15-2832, 2016 WL 4254934 at *4-5. The plaintiff in *Daniel* alleged a violation of his rights under section 1983 via a policy or custom that led to inadequate scheduling of medical appointments, inadequate record keeping, and inadequate responses to medical grievances. *Id.* As a result of the alleged policy-based practices, the plaintiff claimed that he suffered permanent disfiguration and disability in his hand because the defendants failed to schedule him for follow-up appointments to have a cast removed and to participate in physical therapy. *Id.* The plaintiff in *Daniel* did not attempt to name individual defendants. *Id.* The Seventh Circuit noted that Daniel was effectively prevented from naming individual defendants or making a clear policy or custom based claim because the institutional structure of medical care prevented him from frequently seeing the same provider or establishing continuity of care sufficient to show that the care was inadequate. *Id.* In light of the difficulties Daniel faced in stating a succinct claim, and in light of the factual assertions he made about his own experiences as well as the care at the facility, the Seventh Circuit found that he had proferred enough evidence on a custom or policy to proceed beyond summary judgment. *Id.*

The present case is nearly on all fours with *Daniel* in the sense that Corley and Daniel suffered very similar injuries, and their alleged experiences with medical staff at their respective institutions were similar. Like Daniel, Corley alleges that he missed multiple medical appointments and physical therapy sessions to address a serious injury to his hand, and thus he alleges he is suffering from ongoing and potentially permanent disfiguration and disability. Although Corley does state a number of claims against individual prison employees and medical providers, he also attempts to make out a claim against Wexford for maintaining a policy of providing inadequate care to save

money. At this juncture, Corley has provided sufficient factual information to allow this claim to proceed beyond screening for further development of the factual record.

**Count 6**

Corley attempts to name Dr. Trost for failing to hire or train medical staff in connection with Wexford. Typically a failure to train claim is construed as a claim against a larger entity or organization. A plaintiff states a claim against a city, county, or other municipality for a failure to train personnel where that failure "amounts to deliberate indifference to the rights of persons with whom the [personnel] come into contact." *City of Canton, Ohio v. Harris*, 489 U.S. 378, 388 (1989); *see also Rodriguez*, 577 F.3d at 832 (to sustain claims against officials acting on behalf of a municipal agent, there must exist allegations that the actions were due to the agent's failure to train its personnel). A plaintiff must allege that the failure to train is the result of an official custom or policy of the city, county, or municipality that he or she is suing. *See City of Canton*, 489 U.S. at 389; *Jenkins v. Bartlett*, 487 F.3d 482, 492 (7th Cir. 2007) ("We shall find deliberate indifference on the part of policy makers only when such indifference may be considered a municipal policy or custom."). A custom or policy may exist where "the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights," that the deficient training can be inferred as a deliberate slight. *Id.* (citing *City of Canton*, 489 U.S. at 390).

Here, Corley implies that Dr. Trost is responsible for hiring and training medical staff, but he does not describe in any detail the bounds of Dr. Trost's responsibility. Count 5 is already proceeding against Defendant Wexford, including, among other things the allegation that Wexford was deliberately indifferent by failing to adequately staff or train the medical unit. Because Corley has not made any allegations specific to Dr. Trost in relation to this claim, the claim will be dismissed at this juncture without prejudice for failure to identify any individualized way in which Dr Trost is tied to this alleged conduct.

**Count 7**

Corley claims that Dr. Ritz's actions constituted deliberate indifference because he allowed an environment of inadequate care to continue. As to the generic inadequate medical care claim, Corley will not be allowed to proceed against Dr. Ritz on this basis because Corley has not provided sufficient factual information to explicitly tie Dr. Ritz to a policy or custom of poor care. *See Pepper,* 430 F.3d at 810. An overarching claim for deliberate indifference is already proceeding against Wexford, so Corley is not losing much ground by the dismissal of his bare assertion that Dr. Ritz was involved in this practice.

**Count 8**

Corley claims deliberate indifference on behalf of Nurse Oakley, the first nurse to see him immediately after he was allegedly slammed into the ground. Corley's factual assertions about Oakley's refusal to provide even the bare minimum such as ice or ibuprofen are sufficient to allow this claim past screening. Although a nurse is not held to as stringent of a standard as a doctor, a nurse still has a duty to provide a reasonable amount of care within the bounds of his or her position. *Perez,* 792 F.3d 779 (noting that a nurse's duty could include administering treatment if authorized to do so, or contacting higher authorities if care he or she was authorized to provide would be so inadequate that awaiting further authorization could be harmful). Accordingly, Count 8 will be allowed to proceed against Defendant Oakley for deliberate indifference to a serious medical condition.

**Count 9**

Corley claims that Defendant Rednour was deliberately indifferent to his serious medical needs because he took Corley away from the health unit before he received medical treatment and he did not respond to Corley's pleas that his hand needed treatment. Even though prison guards have a lesser degree of responsibility for the provision of medical care than other prison employees such as a nurse or doctor, a guard may still be deliberately indifferent if he or she blatantly disregards a

medical need. This is especially true if the guard's own conduct contributes to the need for medical attention. *See Cooper v. Casey,* 97 F.3d 914, 917 (7th Cir. 1996) (holding that a prison guard who uses excessive force has a duty to secure appropriate medical care for the injured inmate). Defendant Rednour did appear to initially respond to the need for medical care by bringing Corley to the health unit, but his conduct in taking Corley away from the medical unit without even the minimal treatment such as an ice pack calls into question whether he exhibited deliberate indifference. Thus, Count 9 will be allowed to proceed against Rednour to allow for development of a more comprehensive factual record.

**Count 10**

Corley alleges that Drs. Trost and Fuentes were deliberately indifferent for refusing to provide him with pain medication stronger than Motrin even after he complained that Motrin did not alleviate his symptoms. A mere disagreement with a course of treatment does not state a claim for deliberate indifference. *See Holloway*, 700 F.3d at 1072-73. If the course of treatment chosen falls below a reasonable standard of care as assessed by professional judgment and practice, however, then a claim for deliberate indifference may exist. *Id.* Count 10 will be allowed to proceed for development of a more comprehensive factual record on the reasonableness of Drs. Trost and Fuentes's course of treatment and prescription of Motrin.

**Count 11**

Corley's allegations against Defendants Dilday and Johnson are sufficient to pass screening under a theory of deliberate indifference. Corley alleges that Dilday and Johnson acted in deliberate indifference to his serious medical condition by refusing to remove or adjust his handcuffs to allow for appropriate physical therapy. Reading Corley's factual allegations liberally, he has alleged a serious injury to his hand that Dilday and Johnson knew about and that these individuals deliberately ignored by refusing to remove his handcuffs. Assuming these two officers had the authority to remove or adjust Corley's handcuffs during the appointment, their refusal to do so may constitute a

deliberate, intentional, and needless interference with his ability to receive proper care. Accordingly, Count 11 will proceed against Defendants Dilday and Johnson.

**Count 12**

Corley alleges that Dr. Ritz exhibited deliberate indifference to his serious medical needs by failing to issue a handcuff pass for his physical therapy session and by denying an external care provider's recommendation for ongoing treatment. First, as to the handcuff pass, Corley baldly alleges that Dr. Ritz was deliberately indifferent regarding the handcuffs because he apparently knew of Corley's physical therapy appointment but did not preemptively issue a pass for alternative restraints to allow the therapist access to Corley's hand. Corley provides no specifics as to how Dr. Ritz knew of the appointment, or if he had the authority to adjust handcuff regulations for the appointment, so Corley has not stated enough to make out a claim for deliberate indifference for denying a handcuff pass.

Second, as to Dr. Ritz's denial to follow an external care provider's recommendation for ongoing care, the claim of deliberate indifference will be allowed to proceed on the same grounds as Count 10. Dr. Ritz is not required to follow all recommendations of external providers, but he may have acted in deliberate indifference by this denial if the course of treatment he chose was not reasonable in light of professional standards. Count 12 will be allowed to proceed to develop a factual record on the reasonableness of Dr. Ritz's course of treatment.

**Count 13**

Corley also alleges that Defendant Gail Walls acted with deliberate indifference to his serious medical condition because she received his grievances regarding the adequacy of his medical care but refused to take any action to ensure that he received proper care. Even though Walls is a supervisor, she may still be liable if her actions were akin to turning a blind eye to Corley's serious medical need. Walls had greater potential responsibility than some non-medical defendants because she is a supervisor of the health care unit. Accordingly, taking Corley's allegation as true that he

notified Walls of his medical needs on numerous occasions, her apparent failure to at least review the appropriateness of the care he was receiving could constitute deliberate indifference. Thus, Count 13 will be allowed to proceed against Defendant Walls.

**Count 14**

Corley's claim for deliberate indifference against Warden Butler will not be allowed to proceed because Corley provided no specific information as to how Butler was made aware of his medical needs or the deliberate indifference of the medical staff. A non-medical employee may be liable for deliberate indifference if she is made aware of a constitutional violation and simply turns a blind eye, but Corley has not alleged that he grieved his medical care to Butler. *See Perez*, 792 F.3d at 780. Instead, he made a number of bare allegations that Butler was aware of his appointments and was aware of his ongoing need for care, but he does not indicate *how* Butler was aware of these things. Accordingly, Count 14 will be dismissed without prejudice for failure to state a claim.

*First Amendment claim*

**Count 15**

Prison officials may not retaliate against an inmate for exercising his First Amendment rights, even if their actions would not independently violate the Constitution. *See Zimmerman v. Tribble*, 226 F.3d 568, 573 (7th Cir. 2000); *DeWalt*, 224 F.3d at 618 ("a prison official may not retaliate against a prisoner because that prisoner filed a grievance"); *Babcock v. White*, 102 F.3d 267, 275 (7th Cir. 1996) (retaliatory transfer); *Murphy v. Lane*, 833 F.2d 106, 108-09 (7th Cir. 1987) (per curiam) (retaliation for filing suit). "A complaint states a claim for retaliation when it sets forth 'a chronology of events from which retaliation may plausibly be inferred.'" *Zimmerman*, 226 F.3d at 573 (citation omitted).

Here, Corley alleges that Defendants Butler and Spiller retaliated against him for filing grievances regarding the amount of time he was to spend in segregation following the inmate fight on March 2, 2015. Corley argues that he filed grievances alerting Defendants Butler and Spiller to the

miscalculation of his one year period in segregation, but that neither of them took action to correct the situation. As a result, he was forced to spend an extra twenty-eight days in segregation. Corley also contends that in response to his grievances, he was threatened with additional time in administrative segregation. Corley's factual assertions identify an exercise of his First Amendment rights by his filing a grievance to correct his credit for time in segregation, and retaliation in the form of inaction by Spiller. Count 15 will be allowed to proceed against Spiller because the facts alleged indicate that Spiller was made aware on multiple occasions of the credit issue, and he was in a position to correct the credit issue.

By contrast, the claim will not be allowed to proceed against Defendant Butler because Corley has not clearly alleged that Butler received specific and detailed notice of the credit issue and turned a blind eye or failed to act. This dismissal will be without prejudice.

### Identification of Unknown Officer

Corley shall be allowed to proceed with Count 1 against Defendant John Doe 1. This party must be identified with particularity, however, before service of the complaint can be made on him or her. Where a prisoner's complaint states specific allegations describing conduct of individual prison staff members sufficient to raise a constitutional claim against the unknown defendants, the prisoner should have the opportunity to engage in limited discovery in order to ascertain the identity of those defendants. *Rodriguez*, 577 F.3d at 832. In this case, guidelines for discovery aimed at identifying Defendant John Doe 1 will be set by United States Magistrate Judge Donald G. Wilkerson, so that Corley can identify John Doe 1 with particularity. The Court cannot discern, at this early stage, whether Defendant Rednour can assist in identifying this individual. Therefore, for the sole purpose of assisting with the identification process, the Court shall direct the Clerk to add Menard's Warden as a defendant, in his or her official capacity only.

Once identified, Plaintiff shall file a motion to substitute the named defendant with "Defendant Unknown Officer" in the case caption and elsewhere in the complaint. Further, Menard's

Warden should file a motion seeking dismissal from this action.

### Pending Motion

Corley has filed a Motion for Recruitment of Counsel (Doc. 3), which shall be **REFERRED** to Magistrate Judge Wilkerson for a decision.

### Disposition

The Clerk is hereby **DIRECTED** to **ADD** Menard's Warden as a defendant, in his or her official capacity only, for the sole purpose of responding to discovery aimed at identifying defendant John Doe 1.

The Clerk is also **DIRECTED** to **ADD DEFENDANT JOHN DOE 1** to the docket sheet.

**IT IS ORDERED** that **COUNTS 2** and **4** are **DISMISSED without prejudice** against **DEFENDANTS BUTLER** and **SPILLER** for failure to state a claim upon which relief may be granted. **COUNT 6** is **DISMISSED without prejudice** for failure to state a claim upon which relief may be granted against **DEFENDANT TROST**. **COUNT 7** is **DISMISSED without prejudice** against **DEFENDANT RITZ** for failure to state a claim. **COUNT 12** is **DISMISSED in part without prejudice** as to **DEFENDANT RITZ** for failure to state a claim for deliberate indifference regarding a handcuff pass. **COUNT 14** is **DISMISSED without prejudice** as to **DEFENDANT BUTLER** for failure to state a claim. And **COUNT 15** is **DISMISSED in part without prejudice** for failure to state a claim against **DEFENDANT BUTLER**.

**IT IS ORDERED** that **COUNT 1** shall receive further review against **DEFENDANTS REDNOUR and JOHN DOE 1**, once he is identified. **COUNT 3** shall receive further review against **DEFENDANTS BUTLER AND SPILLER. COUNT 5** shall receive further review against **DEFENDANT WEXFORD. COUNT 8** shall receive further review against **DEFENDANT OAKLEY. COUNT 9** shall receive further review against **DEFENDANT REDNOUR. COUNT 10** shall receive further review against **DEFENDANTS TROST and FUENTES. COUNT 11** shall receive further review against **DEFENDANTS JOHNSON and DILDAY. COUNT 12** shall

proceed in part against **DEFENDANT RITZ** as to the theory that he was deliberately indifferent for declining to follow recommendations of external care providers. **COUNT 13** shall proceed as to **DEFENDANT WALLS.** And **COUNT 15** shall proceed in part as to **DEFENDANT SPILLER.** With respect to **COUNTS 1**, **3, 5, 8, 9, 10, 11, 12, 13,** and **15**, the Clerk of Court shall prepare for **DEFENDANTS REDNOUR, THE WARDEN OF MENARD, BUTLER, SPILLER, WEXFORD, OAKLEY, TROST, FUENTES, JOHNSON, DILDAY, RITZ,** and **WALLS**: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the Complaint, and this Memorandum and Order to each defendant's place of employment as identified by Plaintiff. If a defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on that defendant, and the Court will require that defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

With respect to a defendant who no longer can be found at the work address provided by Corley, the employer shall furnish the Clerk with the defendant's current work address, or, if not known, the defendant's last-known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file or disclosed by the Clerk.

Corley shall serve upon Defendants (or upon defense counsel once an appearance is entered), a copy of every pleading or other document submitted for consideration by the Court. Corley shall include with the original paper to be filed a certificate stating the date on which a true and correct copy of the document was served on Defendants or counsel. Any paper received by a district judge or magistrate judge that has not been filed with the Clerk or that fails to include a certificate of service will be disregarded by the Court.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g).

Pursuant to Local Rule 72.1(a)(2), this action is **REFERRED** to Magistrate Judge Wilkerson for further pre-trial proceedings, including a decision on Corley's Motion for Recruitment of Counsel (Doc. 3). Further, this entire matter shall be **REFERRED** to Magistrate Judge Wilkerson for disposition, pursuant to Local Rule 72.2(b)(2) and 28 U.S.C. § 636(c), *if all parties consent to such a referral.*

If judgment is rendered against Corley, and the judgment includes the payment of costs under § 1915, Corley will be required to pay the full amount of the costs, regardless of the fact that his application to proceed *in forma pauperis* has been granted. *See* 28 U.S.C. § 1915(f)(2)(A).

Corley is **ADVISED** that at the time application was made under 28 U.S.C. § 1915 for leave to commence this civil action without being required to prepay fees and costs or give security for the same, the applicant and his or her attorney were deemed to have entered into a stipulation that the recovery, if any, secured in the action shall be paid to the Clerk of the Court, who shall pay therefrom all unpaid costs taxed against plaintiff and remit the balance to plaintiff. Local Rule 3.1(c)(1).

Finally, Corley is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **7 days** after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**

**DATED:  September 9, 2016**

_____
**NANCY J. ROSENSTENGEL**
**United States District Judge**