IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| KEON CORLEY, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 3:16-cv-850-NJR-DGW |
| | ) |
| WEXFORD HEALTH SOURCES, INC., | ) |
| KIMBERLY BUTLER, TROST, GAIL | ) |
| WALLS, FUENTES, MARTHA OAKLEY, | ) |
| DR. RITZ, C/O JOHNSON, DILDAY, | ) |
| REDNOUR, SPILLER, JOHN DOE 1, | ) |
| WARDEN OF MENARD CORRECTIONAL | ) |
| CENTER, | ) |
| | ) |
| Defendants. | ) |

# REPORT AND RECOMMENDATION

**WILKERSON, Magistrate Judge:**

This matter has been referred to United States Magistrate Judge Donald G. Wilkerson by United States District Judge Nancy J. Rosenstengel pursuant to 28 U.S.C. § 636(b)(1)(B), Federal Rule of Civil Procedure 72(b), and SDIL-LR 72.1(a) for a Report and Recommendation on the question of whether Plaintiff exhausted his administrative remedies prior to filing this lawsuit, as required by the Prison Litigation Reform Act, 28 U.S.C. § 1997e(a). For the reasons set forth below, it is **RECOMMENDED** that the Motion for Summary Judgment filed by Defendants Fuentes, Ritz, Trost and Wexford be **DENIED** (Doc. 38), that the Motion for Summary Judgment filed by Defendants Butler, Dilday, Oakley, Rednour, Spiller, Walls, and Warden be **GRANTED IN PART and DENIED IN PART** (Doc. 41), that the Motion for Summary Judgment filed by Plaintiff be **MOOTED** (Doc. 50), and that the Court adopt the following findings of fact and conclusions of law.

## INTRODUCTION

Plaintiff's complaint, filed on July 27, 2016 (Doc. 1), alleges claims related to his incarceration at the Menard Correctional Center, where he is currently housed. He claims that on March 2, 2015, after a fight broke out in the prison yard, he was slammed to the ground by Correctional Officers Rednour and John Doe 1, injuring his hands and head, and tightly cuffed despite his injuries. He was then taken to the healthcare unit where Nurse Oakley refused to treat him; the next day, however, he saw the doctor and an x-ray revealed a fractured finger. While he was given pain medication, it was not sufficient and nothing was done despite informing Drs. Trost and Fuentes and nurses. He was subsequently taken for an orthopedic consultation and received surgery on March 9, 2015. However, he was not taken to follow up appointments or all physical therapy sessions. At one physical therapy session, Correctional Officers Dilday and Johnson refused to remove handcuffs, rendering the session fruitless.

Plaintiff further claims that Warden Butler and Spiller policies and conduct contributed to the violent environment and lack of protection from correctional officers. He claims that Dr. Trost, Dr. Ritz, and Wexford Health Sources, have a policy of delaying medical treatment and failing to provide adequate pain medication. Finally, he alleges his due process rights were violated when he was compelled to remain in segregation for 28 days longer than the imposed sentence of 1 year.

Plaintiff's claims were screened pursuant to 28 U.S.C. § 1915A on September 9, 2016 and he was permitted to proceed on the following claims:

**Count 1:** Eighth Amendment excessive force claim for Defendant Rednour and John Doe 1's conduct when they slammed Corley into the ground on March 2, 2015, to make an example out of him during an inmate fight on the yard at Menard;

**Count 3**: Eighth Amendment pattern of violence or harmful environment claim

against Defendants Butler and Spiller for condoning and maintaining a dangerous environment despite being on notice of multiple incidents of improper guard-on-inmate violence;

**Count 5**: Eighth Amendment deliberate indifference to serious medical need claim against Defendant Wexford for maintaining a policy that led to inadequate medical care, delayed medical care, improperly trained medical staff, lack of follow up care, and refusal of pain medication, with the objective of saving money;

**Count 8**: Eighth Amendment claim for deliberate indifference to a serious medical need when Defendant Oakley refused pain medication or other treatment for Corley's injured hand on March 2, 2015;

**Count 9**: Eighth Amendment claim for deliberate indifference to a serious medical condition by delaying medical care for Corley's hand injury on March 2, 2015, by Defendant Rednour;

**Count 10**: Eighth Amendment deliberate indifference claim against Drs. Trost and Fuentes for denying pain medication stronger than Motrin to treat Corley's injured hand;

**Count 11**: Eighth Amendment claim for deliberate indifference against Defendants Johnson and Dilday for refusing to remove Corley's handcuffs and thus obstructing the provision of appropriate physical therapy;

**Count 12**: Eighth Amendment deliberate indifference claim against Dr. Ritz for denying ongoing care recommended by an external provider;

**Count 13**: Eighth Amendment deliberate indifference claim against Defendant Gail Walls for failing to adequately respond to Corley's grievances about a missed appointment, an inadequate physical therapy appointment, and the denial of an external provider's recommendation for follow-up care;

**Count 15**: First Amendment retaliation claim against Defendant Spiller for failing to correct the record as to the one year term of segregation Corley was to serve, thus causing him to spend an extra twenty-eight days in segregation.

(Doc. 7, as modified).

All Defendants (except John Doe 1) and Plaintiff seek summary judgment on the affirmative defense of failure to exhaust administrative remedies. Defendants argue that Plaintiff either failed to file grievances or that he failed to fully exhaust any grievances that were filed. A

hearing pursuant to *Pavey v. Conley*, 544 F.3d 739 (7th Cir. 2008) was held on July 17, 2017 in which Defendants appeared by counsel and Plaintiff appeared by telephone.[1]

## FINDINGS OF FACT

The parties agree that there are three grievances that may be relevant to the claims in this matter. These grievances are dated May 1, 2015, August 5, 2015, and August 25, 2015. Plaintiff also testified that he submitted other grievances to which he did not get responses. At the hearing, the Court discussed an August 16, 2016[2] grievance that was submitted after this lawsuit was filed and is deemed untimely.

**May 1, 2015 Grievance (Doc. 42-2, pp. 7-10):**

In this grievance, Plaintiff stated that a fight broke out in the yard on March 2, 2015 and that he broke his finger during the "ruckus." He was taken to the nurse, who said he needed an x-ray, and then taken to segregation. He was then admitted to the healthcare unit on March 3, 2015 (for the x-ray) and received surgery on March 9, 2015. Up until March 19, 2015, when he was informed that he would have to return to the surgeon to remove the pins in his finger, Plaintiff stated that "the healthcare unit was doing a great job." However, he was not sent back to the surgeon until April 22, 2015, 3 weeks overdue. As a result, he grieved, his finger is permanently damaged and he no longer has full range of movement. Plaintiff indicated that a Jane Doe nurse and a John Doe correctional officer were informed of the appointment to remove

---

[1] These hearings are typically conducted with the inmate appearing by video. However, on the date of hearing, the video-conferencing equipment at the prison was not working.

[2] This grievance concerns Plaintiff's untimely release from segregation but also recounts the lack of healthcare and ignored grievances (Doc. 42-2, pp. 2-4). Plaintiff stated that he informed Correctional Officer Dunbar and his Counselor, Monica Nippe that he should have been released from segregation on March 2, 2016, to no avail. He also recounts that he sent multiple grievances about the issue (and perhaps medical issues) but that no responses were received. The grievance does not have a counselor's response and appears to have been sent directly to the ARB. The ARB denied the grievance as untimely.

the pins. Plaintiff sought correction of the damage to his finger, therapy, and monetary damages.

His counselor (Brad Bramlett) received the grievance on May 11, 2015 and on May 30, 2015, Nurse Gail Walls issued a memorandum stating that there was a delay in receiving information on the follow up appointment from the doctor's office and that "a new procedure has been put in place to keep it from happening ever again." He was informed that he was approved for physical therapy (he had already had a consultation in that regard) and that a follow up appointment was scheduled.

There is no indication in the record that Plaintiff appealed to the grievance officer. However, Plaintiff testified that he sent the grievance to the grievance officer but that he did not receive a response. After the lack of response, Plaintiff sent the grievance to the Administrative Review Board (ARB) which received this grievance on October 5, 2015. The ARB directed Plaintiff to provide additional information, namely the grievance officer's and Warden's responses.

**August 5, 2015 Emergency Grievance (Doc. 42-2, pp. 16-17).**

In this emergency grievance, Plaintiff (after noting that the response to the May 1, 2015 grievance was unhelpful) complained that he was shackled/handcuffed when he went to a physical therapy session on May 5, 2015 by Correctional Officers Johnson and Dilday. He then relayed how he broke his finger (by being "slammed to the ground by an officer"), that it wasn't x-rayed until a day later, that he had surgery on March 9, 2015, that he informed a Jane Doe nurse about a follow up appointment for which a Correctional Officer Lane had the paperwork, that the follow up was delayed until April 22, 2015, and that his fingers are now permanently damaged. He then had a physical therapy consultation on May 5, 2015, while shackled, that Dr. Trost saw him thereafter but did not perform an examination, and that Dr. Ritz denied a follow

up visit on July 24, 2015. Since that time, nothing had been done. Plaintiff listed Dr. Fuentes at the end of the grievance but did not otherwise refer to her in the body of the grievance.

The Warden (Kimberly Butler) determined that the matter was not an emergency on August 19, 2015 (it was received on August 18, 2015) and Plaintiff appealed to the ARB on August 28, 2015. The ARB directed Plaintiff to provide the counselor's, grievance officer's and Warden's responses.

It appears that Plaintiff submitted this grievance to his counselor and that a response was generated (*See* Doc. 42-2, p. 11, Doc. 39-4, p. 4).[3] That response, however, is not part of the record. Plaintiff testified that after he received a response from the counselor, he sent it to the grievance officer but received no response.

**August 25, 2015 Grievances (Doc. 42-2, pp. 7, 11-15):**

Plaintiff wrote out two grievances on this date, one that he sent directly to the ARB and another that he sent to his counselor. In the grievance sent directly to the ARB, Plaintiff indicated that it was a follow-up to the May 1, 2015 and August 5, 2015 grievances. He recounted the events of his injury and subsequent medical treatment and requested corrective surgery, other medical treatment, and punitive damages (Doc. 42-2, pp. 14-15). The ARB directed plaintiff to provide the counselor's, grievance officer's, and Warden's responses (Doc. 42-2, p. 13).

The grievance submitted to Plaintiff's counselor is not a photocopy, but appears to contain identical information. A counselor responded on August 28, 2015 and attached a memorandum from Gail Walls. Nurse Walls indicated that Plaintiff had a physical therapy evaluation on May 5, 2015, that he was denied a follow up appointment with the orthopedist on

---

[3] Both documents, which are a response to an August 25, 2015 grievance, state that the same response was provided to the August 5, 2015 grievance.

June 15, 2015 (by Dr. Ritz), that he had no complaints until July 30, 2015 when he bumped his finger, that he was given pain medication, and that a subsequent x-ray on July 21, 2015 showed the fracture had healed (Doc. 39-4, p. 4). Plaintiff testified that the counselor who responded, Sandy Meyers, was in fact the grievance officer at the time. Plaintiff assumed that was in effect the grievance officer's response even though it was made in the area where a counselor would respond.

**Grievances not in the record**

As set forth above, Plaintiff testified that he submitted grievances to which he did not receive a response. The first was submitted on June 9, 2015. In this grievance, Plaintiff inquired after a previously filed grievance and sought surgery and physical therapy for his injury. Plaintiff named all of the doctors (Fuentes, Trost, and Ritz) and Nurse Oakley. Plaintiff also submitted a grievance around July 20, 2015. In this grievance, Plaintiff named the aforementioned medical providers and Warden Butler. He again was attempting to follow up on previous grievances and complained about lack of medical treatment and therapy. From Plaintiff's testimony, it appears that these two grievances concerned the same matters as were made in the grievances in the record – namely, lack of follow-up care for his finger. No responses to these grievances were received.

The only grievance logged by the prison was Plaintiff's August 5, 2015 emergency grievance. The prison has no log that reflects that Plaintiff's other grievances were received by a grievance officer. The Court, however, finds Plaintiff credible in his testimony that he submitted these grievances to the grievance officer by placing them in the bars of his cell. The grievances were picked up by a correctional officer but he never did receive responses from the grievance officer.

## CONCLUSIONS OF LAW

Summary judgment is proper only if the moving party can demonstrate "that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." FEDERAL RULE OF CIVIL PROCEDURE 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). *See also Ruffin-Thompkins v. Experian Information Solutions, Inc.*, 422 F.3d 603, 607 (7th Cir. 2005); *Black Agents & Brokers Agency, Inc. v. Near North Ins. Brokerage, Inc.*, 409 F.3d 833, 836 (7th Cir. 2005). The moving party bears the burden of establishing that no material facts are in genuine dispute; any doubt as to the existence of a genuine issue must be resolved against the moving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 160 (1970). *See also Lawrence v. Kenosha County*, 391 F.3d 837, 841 (7th Cir. 2004). A moving party is entitled to judgment as a matter of law where the non-moving party "has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." *Celotex,* 477 U.S. at 323. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.* The Seventh Circuit has stated that summary judgment is "the put up or shut up moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of the events." *Steen v. Myers*, 486 F.3d 1017, 1022 (7th Cir. 2007) (quoting *Hammel v. Eau Galle Cheese Factory*, 407 F.3d 852, 859 (7th Cir. 2005) (other citations omitted)).

The Prison Litigation Reform Act provides:

> No action shall be brought with respect to prison conditions under Section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a). Exhaustion of available administrative remedies is a precondition to suit. *Dale v. Lappin*, 376 F.3d 652, 655 (7th Cir. 2004). *See also Perez v. Wis. Dept. of Corr.*,182

F.3d 532, 534-535 (7th Cir. 1999) (stating that §1997e(a) of the PLRA "makes exhaustion a precondition to bringing suit" under § 1983). Failure to exhaust administrative remedies is an affirmative defense; defendants bear the burden of proving a failure to exhaust. *See Jones v. Bock*, 549 U.S. 199, 216 (2007); *Dole v. Chandler*, 483 F.3d 804, 809 (7th Cir. 2006). The Supreme Court has interpreted the PLRA to require "proper exhaustion" prior to filing suit. *See Woodford v. Ngo*, 548 U.S. 81, 84 (2006). This means "using all steps that the agency holds out, and doing so properly (so that the agency addresses the issues on the merits)." *Id.* at 90, (quoting *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002)). In finding that the PLRA requires proper exhaustion, the Supreme Court agreed with the Seventh Circuit's interpretation of the statute as stated in *Pozo*, which required an inmate to "file complaints and appeals in the place, and at the time, the prison's administrative rules require." *Pozo*, 286 F.3d at 1025. In *Pavey*, the Seventh Circuit instructed District Courts to conduct a hearing to determine whether a Plaintiff has exhausted his remedies. *Id.* 544 F.3d at 742. If a Plaintiff has exhausted his remedies, the case will proceed on the merits. If, however, a Plaintiff has not exhausted, the Court may either allow Plaintiff to exhaust or terminate the matter.

Under the procedures set forth in the Illinois Administrative Code, an inmate must first attempt to resolve a complaint informally with his Counselor. ILL. ADMIN. CODE TIT. 20, § 504.810(a) (2015).[4] If the complaint is not resolved, the inmate may file a grievance with the Grievance Officer within 60 days after the discovery of the incident, occurrence, or problem that gives rise to the grievance. *Id*. §504.810(a) and (b). The grievance officer is required to advise the Chief Administrative Officer ("CAO" – usually the Warden) at the facility in writing of the findings on the grievance. *Id.* §504.830(d). The CAO shall advise the inmate of the decision on

---

[4] The Code was amended on April 1, 2017.

the grievance within two months of it having been filed. *Id.* § 504.830(d). An inmate may appeal the decision of the CAO in writing within 30 days to the Administrative Review Board for a final decision. *Id.*, § 504.850(a). *See also Dole v. Chandler*, 438 F.3d 804, 806-07 (7th Cir. 2006). An inmate may request that a grievance be handled as an emergency by forwarding it directly to the CAO. If the CAO determines that there exists a substantial risk of imminent personal injury or other serious or irreparable harm, the grievance shall be handled on an emergency basis, which allows for expedited processing of the grievance by responding directly to the offender indicating what action shall be taken. *Id.* §504.840.

An inmate is required to exhaust only those administrative remedies available to him. *See* 42 U.S.C. § 1997e(a). The Seventh Circuit has held that administrative remedies become "unavailable" when prison officials fail to respond to inmate grievances. *Lewis v. Washington*, 300 F.3d 829, 833 (7th Cir. 2002); *Brengettcy v. Horton*, 423 F.3d 674, 682 (7th Cir. 2005). The availability of a remedy does not depend on the rules and regulations as they appear on paper, but on "whether the paper process was in reality open for the prisoner to pursue." *Wilder v. Sutton*, 310 Fed.Appx. 10, 13 (7th Cir. 2009). If further remedies are unavailable to the prisoner, he is deemed to have exhausted. *Id.* Prisoners are required only to provide notice to "responsible persons" about the complained-of conditions. *See Wilder*, 310 Fed.Appx. at 15 (citing *Kaba v. Stepp*, 458 F.3d 678, 684 (7th Cir. 2006)). An inmate forfeits the grievance process, however, when he causes the unavailability of a remedy by not filing or appealing a grievance. *See Kaba*, 458 F.3d at 684.

In general, the Court finds that by failing to respond to the May 1, 2015, June 9, 2015, July 20, 2015, August 5, 2015, and August 25, 2015 grievances, administrative remedies became unavailable. Plaintiff is deemed to have fully exhausted these grievances even though the prison

has no record of them. Therefore, to the extent that Plaintiff's claims in this lawsuit are contained in those grievances, Plaintiff is deemed to have exhausted his administrative remedies as to those claims. However, because of the timing and content of these grievances, Plaintiff did not exhaust his administrative remedies as to all counts in the complaint, as shall be set forth below.

**Count 1:**

In this Count, Plaintiff claims that Defendant Rednour and John Doe 1 used excessive force on March 2, 2015. Plaintiff did not submit a grievance, within 60 days or by May 1, 2015, in which he grieved the actions of these two Defendants. While he did mention the incident in the August 5, 2015 grievance, it was filed too late. As to John Doe 1, this Report and Recommendation serves as notice pursuant to Federal Rule of Civil Procedure 56(f)(1) that summary judgment may be granted as to this nonmovant for the same reasons: no timely grievance was filed. Count 1 should be dismissed without prejudice.

**Count 3**:

This Count stems from the March 2, 2015 incident and the grievances that he subsequently drafted. However, there is no grievance that discussed the general concerns about the hostile environment at Menard or the specific violent environment of Menard that then led to staff-on-inmate assaults. Each of Plaintiff's grievances, while mentioning the March 2, 2015 incident, primarily concerned the medical care that Plaintiff received and not the conditions under which he was incarcerated. As such, no grievance served the function of notifying the prison of this concern and inviting corrective action. Count 3 should be dismissed without prejudice.

**Count 5**:

In this policy and practice claim, Plaintiff alleges that money was a motivating factor in failing to provide adequate medical care. There is no grievance that specifically names Wexford or that alleges an unconstitutional policy and practice. However, in the exhausted May 1 grievance, Plaintiff complained about delays in his medical care. In the exhausted August 5 grievance, he listed "negligent implementat[ion] of I.D.O.C. policy" and again complained of delay and that a change in procedures did not help his concerns. He goes on to indicate that Dr. Ritz (of Wexford) cancelled a follow up visit and that no doctor has talked to him about his x-rays and what must be done next to correct the damage to his finger. Some of these concerns were echoed in his August 25 grievances. Even though Plaintiff may have not been aware that it was Wexford's policies that may have delayed his medical treatment, his grievances were sufficient to notify the prison that delay was his main complaint. *See Turley v. Rednour*, 729 F.3d 645, 650 (7th Cir. 2013) ("Once a prison has received notice of, and an opportunity to correct, a problem, the prison has satisfied the purpose of the exhaustion requirement."). The grievance is sufficient to exhaust Plaintiff's claim against Wexford.

**Count 8**:

Plaintiff specifically claims that Defendant Oakley refused pain medication or other treatment for Corley's injured hand on March 2, 2015. There is no timely grievance which complained about medical care received on March 2, 2015. Plaintiff's May 1 grievance states that he was taken to the healthcare unit on March 2, 2015 and told he needed an x-ray. However, he was then taken back to his cell and did not receive care until March 3, 2015. There is no statement that Defendant Oakley refused to treat him on March 2, 2015. Indeed, the grievance states the opposite – that the health care staff did a "great job" until March 19, 2015. Subsequent

grievances were untimely.  Count 8 should be dismissed without prejudice.

**Count 9**:

There also is no grievance that states that Defendant Rednour delayed medical care on March 2, 2015.  Count 9 should be dismissed without prejudice.

**Count 10**:

This Eighth Amendment deliberate indifference claim against Drs. Trost and Fuentes for denying pain medication stronger than Motrin to treat Corley's injured hand is exhausted.  In his August 5, 2015 grievance, Plaintiff stated that Dr. Trost and Dr. Fuentes failed to provide medical care since he returned from furlough.  While Plaintiff did not specific what type of care (i.e. pain medication), the general statement is sufficient to notify the prison of his lack of adequate treatment.

**Count 11**:

Plaintiff set forth this claim in the August 5, 2015 and August 25, 2015 grievances: that he was shackled on May 5, 2015 by Johnson and Dilday during a physical therapy session.  This grievance was submitted more than 60 days from May 5, 2015 and is untimely.  Count 11 should be dismissed without prejudice.

**Count 12**:

This claim against Dr. Ritz was exhausted in Plaintiff's August 5 and August 25 grievances where he specifically stated that Dr. Ritz failed to approve follow up appointments.

**Count 13**:

This claim against Walls was exhausted in Plaintiff's August 5, 2015 grievance.

**Count 15**:

Plaintiff's retaliation claim against Defendant Spiller is not set out in any timely

grievance. Count 15 should be dismissed without prejudice.

## RECOMMENDATIONS

For the foregoing reasons, it is **RECOMMENDED** that the Motion for Summary Judgment filed by Defendants Fuentes, Ritz, Trost and Wexford be **DENIED** (Doc. 38), that the Motion for Summary Judgment filed by Defendants Butler, Dilday, Oakley, Rednour, Spiller, Walls, and Warden be **GRANTED IN PART and DENIED IN PART** (Doc. 41), that the Motion for Summary Judgment filed by Plaintiff be **MOOTED** (Doc. 50),[5] and that that Court adopt the foregoing findings of fact and conclusions of law.

Specifically, it is **RECOMMENDED** that Counts 1, 3, 8, 9, 11, and 15 should be **DISMISSED WITHOUT PREJUDICE** and that Defendants Rednour, John Doe 1, Butler, Spiller, Oakley, Rednour, Johnson, and Dilday be **DISMISSED WITHOUT PREJUDICE**.

If the Court adopts this Report and Recommendation, the following claims would remain in this lawsuit:

> **Count 5**: Eighth Amendment deliberate indifference to serious medical need claim against Defendant Wexford for maintaining a policy that led to inadequate medical care, delayed medical care, improperly trained medical staff, lack of follow up care, and refusal of pain medication, with the objective of saving money;
>
> **Count 10**: Eighth Amendment deliberate indifference claim against Drs. Trost and Fuentes for denying pain medication stronger than Motrin to treat Corley's injured hand;
>
> **Count 12**: Eighth Amendment deliberate indifference claim against Dr. Ritz for denying ongoing care recommended by an external provider;
>
> **Count 13**: Eighth Amendment deliberate indifference claim against Defendant Gail Walls for failing to adequately respond to Corley's grievances about a missed appointment, an inadequate physical therapy appointment, and the denial of an external provider's recommendation for follow-up care.

---

[5] The arguments and evidence presented in Plaintiff's motion have been considered. However, in light of the conclusions with respect to Defendants' motions and the overlapping nature of the arguments and evidence, Plaintiff's request for judgment is moot.

Pursuant to 28 U.S.C. § 636(b)(1) and SDIL-LR 73.1(b), the parties shall have fourteen (14) days after service of this Report and Recommendation to file written objection thereto. The failure to file a timely objection may result in the waiver of the right to challenge this Report and Recommendation before either the District Court or the Court of Appeals. *Snyder v. Nolen*, 380 F.3d 279, 284 (7th Cir. 2004); *United States v. Hernandez-Rivas*, 348 F.3d 595, 598 (7th Cir. 2003).

**DATED: November 9, 2017**

                                        **DONALD G. WILKERSON**
                                        **United States Magistrate Judge**